## THE TERRITORY EX REL EISENMANN V. SHEARER.

1. MANDAMUS: JURISDICTION IN: JUDGE AT CHAMBERS. A Judge of the District Court at Chambers, has jurisdiction to issue, or direct the issuance of an alternative writ of mandamus, returnable before him in vacation, within his district, and outside of the judicial subdivision in which the proceedings are entitled.

2. SAME: TRIAL AND JUDGMENT. And in such case the Judge may proceed to trial and judgment, and issue the peremptory writ in vacation, outside of such judicial subdivision, at any place within his district.

3. SAME: SURPLUSAGE IN WRIT. The Judge having full authority to sign the alternative writ, the words, ' By the Court," before his signature, are to be regarded as surplusage, the peremptory writ being signed and issued by him as judge.

4. **SAME: WRIT NOT ATTESTED BY CLERK.** The Judge having authority to issue the writ *himself*, it is not necessary for him to enter an order or judgment directing its issue; and when issued by the Judge, the writ need not be attested by the clerk.

5. **DISTRICT COURTS: ALWAYS OPEN.** The District Courts are always open and have jurisdiction, to try and determine special proceedings of a civil nature, including mandamus, outside of the county or judicial subdivision in which the same are entitled.

6. **ACT OF FEBRUARY 22 1879.** Construction of the Act of the Legislative Assembly, approved February 22, 1879, consolidating Hutchinson and Armstrong counties.

7. **NO REMEDY AT LAW: ALLEGATION OF, IN PLEADINGS.** Where it is apparent from an inspection of the record that the relator " has no plain, speedy and adequate remedy at law," this allegation is not necessary either in the affidavit or alternative writ.

8. **MANDAMUS: TO COMPEL TRANSFER OF PUBLIC RECORDS.** Mandamus is the proper remedy to compel the transfer or delivery of books, seals, papers and property pertaining to a public office, to the person properly entitled thereto.

*Appeal from the District Court of Hutchinson County.*

*Dewey & French,* for appellant.

I.   Plaintiffs in this case commenced suit by issuing alternative writ of mandamus to said defendant requiring him to deliver books, papers and property pertaining to the office of register of deeds and *ex-officio* county clerk of Armstrong county, or show cause to the contrary before the Judge at his chambers in Yankton county.

Defendant appeared and demurred to the writ. And the said demurrer being overruled, elected to stand on the demurrer. And brings the cause to this court, assigning as error:

1.   That the court had no jurisdiction.

2.   That there was a defect of parties plaintiff.

3.   That the defendant was required to answer before the District Court of Yankton county, and not in the District Court of the sub-division where the action was brought.

4.   That the writ does not state facts sufficient to constitute a cause of action.

5.   That judgment was rendered and signed, " by the Court,.

PETER C. SHANNON, Judge," at Yankton, in the Second Judicial District, instead of being rendered and signed in the subdivision in which the cause in said action was laid.

6. Because judgment was rendered and signed, "by the Court of the Second Judicial District," and does not conform to the law authorizing the hearing of such cases by the Judge in vacation.

7. That the action having been laid in a subdivision of the present judicial district, no part of which embraces Yankton county, the cause could only have been heard and determined in the subdivision where the action was brought.

Rules of practice in regard to special proceedings are the same as Part 2 of the Code of Civil Procedure, so far as applicable, unless otherwise provided in the chapter on special proceedings. (Page 631, Code of Procedure, § 713.)

Part 2 of Code of Procedure provides for the place of trial, and there can be no exception, except such as is found in section 712 of Code of Procedure, page 631.

Law requires the trial to be in the county where one of the parties reside, if either party lives in the Territory. (Code of Civil Procedure, § 94, p. 524; 2 Abbott, United States, 78.)

The court of the Second Judicial District for the subdivision comprising the counties of Hutchinson, Armstrong, Hanson and Davison, could not be open at Yankton, in the county of Yankton, Territory of Dakota, for the hearing of special proceedings, granting orders or rendering judgment, no part of said Yankton county being in said subdivision. (47 Howard, 467.)

This action being entitled in the subdivision comprising the counties of Hutchinson, Armstrong, Hanson and Davison, the court for the Second Judicial District could not hear or render judment in the same outside the boundaries of said subdivision. (47 Howard, 467.)

The action will only lie where the party making the application has not a plain, speedy and adequate remedy at law. Hence the affidavits in which application for alternative writ is found should state that the defendant has no remedy at law. (Code of Procedure, § 696, p. 629; High on Extraordinary Legal Remedies, 13; High on Ex. Legal Rem., 43.)

Mandamus will not lie to try the title to an office. The title must be settled by an action in the nature of *quo warranto*. (High on Ex. Legal Rem., 62 ; 15 Illinois, 492 ; High on Ex. Legal Rem., 43 ; 10 Missouri, 118 ; 43 Missouri, 256 ; 18 Michigan, 338.)

An appeal suspends the operation of a judgment for all purposes, so that it is not admissible as evidence in any controversy between the parties. (13 California, 634 ; 14 Louisiana, An. 653.)

The general rule is, with regard to the effect of an appeal, that a judgment from which an appeal has been granted is no longer in force. (Hilliard on New Trials, § 71, p. 733 ; 2 Murphy, (N. C.,) 227 ; 5 Coldwell, (Tenn.,) 622, ib. 647.)

Nor can a judgment appealed from be pleaded as *res judicata.* (Hilliard on New Trials, p. 734 ; 14 Louisiana, An. 653.)

The Act by which it is claimed said counties were consolidated is inoperative, for the reason that it is conditional upon an affirmative vote of the people of said counties, at an election to be held for that purpose, which condition has never been performed, no election ever having been held. Interpretation of the Statute must be such as to give effect to the intention and object of its framers. (Potter's Dwaris Statutes, 174.)

Interpretation to be gathered from the words used. (Potter's Dwaris on Statutes, 204; Potter's Dwaris on Statutes, 192–3, note ; Potter's Dwaris on Statutes, 197; 3 Howard United States, 565 ; 11 New York, 601–4; 20 Wend., 561–2.)

Words to be construed according to their exact meaning, if they have any that can be discovered. (Potter's Dwaris on Statutes, 207 ; Potter's Dwaris on Statutes, 208 ; Potter's Dwaris on Statutes, 216–17.)

It is a general rule in construction that a general intent controls a particular intent. (Cooley on Con. Lim., 71, note.) Special laws unconstitutional. (28 Wisconsin, 542.)

*R. J. Gamble,* District Attorney, *S. L. Spink* and *J. R. Gamble,* for respondents.

I. The relator in these proceedings claims that the defendant was, prior to February 28, 1879, the Register of Deeds and *ex-officio* County Clerk of Armstrong county, and that the relator was on

that day and ever since Register of Deeds and *ex-officio* County Clerk of Hutchinson county.

That on the said 28th day of February, 1879, Armstrong county was by an act of the Legislative Assembly wholly consolidated with Hutchinson county, and that the said office of the defendant, including the whole organization of Armstrong county, was by virtue of said act abolished. And that it was made his duty to *immediately take to and deliver to the relator all papers and property pertaining to said office of defendant.* (See chapter 12, laws 1879, page 30 *et seq.*)

That the defendant, in violation of the mandatory provisions of section 4 of said act, has refused to deliver said papers and property, and has ever since exercised said office, so abolished. That the relator brought the proper action in the nature of *quo warranto* to test the defendant's right to exercise said office, and obtained the proper judgment against him. That the defendant still refused to deliver said papers and property, although demand for the same was duly made.

That the relator having no other remedy, thereupon in vacacation, made the proper application to the Judge of the District, at Yankton, under section 712 of the Code of Civil Procedure, for an alternative writ of mandamus. The judge directed said writ to be issued and the same was issued returnable before him on the 30th day of August, 1880, at Yankton, in his district.

The defendant made a general appearance in person and by counsel, and moved to dismiss the writ. The judge properly overruled the motion. The defendant, thereupon, demurred to said writ for the reasons stated in the demurrer. The judge properly overruled said demurrer, and the defendant, electing to stand on his demurrer, judgment was entered directing a peremptory writ to issue. The judgment on the demurrer was heard and judgment entered at Yankton, at the place mentioned in the alternative writ. And a peremptory writ was, thereupon, immediately signed and issued by the judge, and properly attested by the clerk of the court, at his county, under the seal of the court, returnable on the 6th of September. Prior to that date, on the 4th day of September, 1880, the defendant perfected the present

appeal and appeared at the time and place mentioned in the writ, and moved to quash the same, which motion was overruled. He thereupon returned that he had perfected the present appeal, but failed to obey said writ.

II. Appellant's counsel, as they state orally, insist that the act of February 22nd, 1879, *supra*, does not consolidate Armstrong with Hutchinson county. The plain reading of the act admits of no other construction than that the above consolidation was made, and its absolute and immediate operation on the above counties cannot admit of a doubt. The going into effect of the law as to those counties did not depend upon any vote of the people.

The second section of the act absolutely and in express terms consolidates the two counties.

The third section is absolute, and without proviso or condition, provides who shall hold the offices in the enlarged county of Hutchinson, and the relator by virtue of his office has the additional territory formerly embraced in the county of Armstrong included in his jurisdiction.

The fourth section of said act is *mandatory* in its requirements, and especially enjoins all officers of Armstrong county (including defendant) except justices of the peace and constables, to immediately take to and deliver to the like officers of Hutchinson county, all papers and property pertaining to their offices, respectively, which is required to be delivered to their successors in office by section 149, chapter 5 of the Political Code, and that immediately their offices should cease and determine.

If the counties of Hutchinson and Armstrong are consolidated, and there can be no doubt that they are consolidated by said act, then a writ of mandamus could be legally issued to compel the delivery of the books, papers and property to the relator, which section 4 especially enjoins to be delivered. See section 695, *et seq*, page 629, Code of Civil Procedure.

Section 695 provides that the writ of mandamus may be issued by the Supreme and Districts Courts to any inferior tribunal or person to compel the performance of an act which the law especially enjoins as a duty resulting from an office. And section 712 expressly gives the same power to a judge of the District Court in vacation.

III.   Mandamus is the proper remedy to compel the transfer or delivery of the books, seals, instruments, records, papers and other paraphernalia pertaining to a public office, to the person properly entitled to their custody.   (*People v. Kilduff*, 15th Ill.. 492; *People v. Head*, 25th Ill., 325; *Crowell v. Lambert*, 10th Minn., 369; *Atherton v. Sherwood*, 15th Minn., 221; *Burr v. Norton*, 25th Conn., 103; *Arthur Warner v. John Myers*, 4th Oregon, 72.

The existence of possible equitable remedy does not affect the jurisdiction of  courts of law by the writ of mandamus, for while such remedies may properly be taken into consideration in determining  the exercise of judicial discretion  in allowing the writ, they do not affect the question of jurisdiction.   (High's Extraordinary Legal Remedies, page 21, section 20.

In this case a demand for delivery and refusal to deliver the books, papers and property pertaining to the former office of register of deeds and *ex-officio* county clerk of Armstrong county, is properly alleged in the alternative writ of mandamus, and the defendant having demurred thereto admits this fact; but the duty being of a public nature no demand was necessary.   (*State v. County Judge of Marshall*, 7th Iowa, 186; ib., 390; *Commonwealth v. Commissioners of Allegheny*, 37th Pa. State, 237; 6th Nevada, 30.

Application for the writs and answer, are the  only pleadings allowed in applications for mandamus, and  if the respondent file a demurrer and the same is overruled, the writ will issue and no further pleadings be considered.   (*People v. Hamilton County*, 3d Nebraska, 244.)

The judge had jurisdiction to issue the writ out of the county where the defendant resided, and to compel the defendant to make return to the same in another county of his district.   (*Jones v. McMahon*, 30th Texas, 719.)


KIDDER, J.—The relator applied to the judge of the Second Judicial District at Yankton in said district upon affidavits, for an alternative writ of mandamus commanding the defendant to immediately  take to and deliver to the relator all the papers and property pertaining to the defendant's office.   The alternative

writ was granted by the judge returnable before him at Chambers, at Yankton, that being outside of said subdivision.

The defendant appeared on the return day and demurred to the said writ because the court or judge had no jurisdiction to issue the writ and make it returnable at Yankton outside of said subdivision; because the writ did not state facts sufficient to constitute a cause of action, in this, because it does not recite in terms that the relator has no plain, speedy and adequate remedy at law; and because the act of February 22, 1879, did not consolidate Armstrong with Hutchinson county, and did not abolish defendant's office of register of deeds and *ex-officio* county clerk of the former county.

The appellant further insists that the court had no authority to try the issue of law raised by the demurrer, at Yankton in vacation, and render judgment on the overruling of the demurrer; and that there was error in this, because the judgment or order was signed, " By the Court, PETER C. SHANNON, Judge."

The appellant also insists that an action in the nature of *quo warranto* is the proper remedy, and not mandamus.

The alternative writ showed that the relator on February 22nd, 1879, and prior thereto, was the duly authorized register of deeds and *ex-officio* county clerk of Hutchinson county. That prior and up to that time the appellant had been register of deeds and *ex-officio* county clerk of Armstrong county. That by said act (*vide* chapter 12, laws of 1879, page 20) approved on that day, the defendant's said office was abolished, and Armstrong county was consolidated with and made a part of Hutchinson county; and that it was expressly enjoined as a duty of the appellant by section 4 of said act, to *"immediately take to and deliver to the relator all the papers and property pertaining to the appellant's office."* That compliance with the Statute had been demanded and refused. That the relator had commenced an action against the appellant in the nature of *quo warranto* and a judgment had been rendered against him. That demand was again made but the appellant still refused to deliver the same, whereupon these proceedings were commenced.

After the overruling of the appellant's demurrer, and he

having elected to stand on the same, judgment was entered direct-
ing a peremptory writ to issue, which writ was immediately
signed and issued by the judge at Yankton and attested by the
clerk of the court of said subdivision, under the seal of the court,
at Olivet. The peremptory writ was duly served on the appellant
and on the return day he perfected this appeal.

The *first* question presented for our determination is: 1. Had
the judge, at Chambers, any jurisdiction or authority to issue or
direct the issue of the alternative writ of mandamus returnable
before him within his district but outside of the subdivision in
which the proceedings are entitled? 2. Could such judge pro-
ceed to trial and judgment and issue the peremptory writ outside
of the subdivision?

This authority is expressly given to the judge by section 712
of the Code of Civil Procedure, which provides that writs of
mandamus may be "issued by a judge of the District Court, in
vacation, and when issued by a judge of the District Court may
be made returnable and a hearing thereon be had in vacation."
That it was competent for the Legislature to confer such authority
on the judge we have no doubt. Statutes conferring the same
authority upon judges are found in many of the States and
their constitutionality, except in the case of *Brown v. Atkin*, 1
Utah 277, has never been questioned, but the court held in that
case that it was competent for the Legislature to confer this
authority upon a judge in vacation. The same jurisdiction is
recognized, under a Statute similar to ours, by the Supreme
Court of California in the case of *Lacro v. Casamenava*, 30 Cal.,
560.

This authority being conferred upon the judge at Chambers, it
is well settled that he can hold his Chambers at any place in his
district. He is not obliged to go to the county or subdivision
where the action or proceeding is pending before he can act as
judge therein. It would be absurd to hold that the judge is
obliged to go to the county where an action is pending before it is
competent for him to sign an order directing his clerk to enter a
judgment by default under our Statute. And it would be equally
absurd, and under a mandamus a slow instead of a speedy

remedy, if the judge, who has authority to issue the writ, could not make it returnable before him anywhere in his district.

There is nothing in the objection of the appellant that the judge inserted before his signature the words " by the Court." He had full authority to sign it as judge. The words " by the Court" would therefore be surplusage. But if there was any force in this objection it is entirely removed by the fact that the peremptory writ was immediately signed and issued by the judge. The judge having full authority to issue the writ himself, it was not necessary for him to enter an order or judgment directing its issue. And it is not necessary for the clerk to attest the writ when the same is issued by the judge at Chambers.

The appellant also submits that there is error in the proceedings because *the court* had no jurisdiction to require him to answer the alternative writ, or to try and determine the issues of law raised by the demurrer, outside of the subdivision. This position is untenable under our Statute. For the purpose of hearing and determining special proceedings of a civil nature, the District Courts *are always open*. (Section 31, Code of Civil Procedure.) The appellant insists that no matter how distant such court is from his residence, or from the place where he is actually engaged in holding terms of court elsewhere in his district, the Judge must actually be in the county, or subdivision, before such court could be open. If such position is correct then these courts are *not always open* for the purpose of hearing special proceedings, but are only open when the Judge happens to go into such county, or subdivision, and not open at such times elsewhere in the district. This construction contended for would be a contradiction of the plain terms of the Statute, and intention of the Legislature. It is true that section 237 provides: " That issues of law must be tried at a regular or special term of the District Court." But this section is intended to apply generally to civil actions, and the fact that the Legislature has inserted the special provision of section 31, *supra*, shows that it intended to make an exception in regard to special proceedings of a civil nature. We are, therefore, of the opinion that the District Courts have jurisdiction to try and determine special proceedings, including mandamus, outside of the county or sub-

division, in which such proceeding is pending. The court has authority conferred upon it by section 700 of said Code to order issues of fact to be tried by a jury in a mandamus proceeding, and designate any county in his district where the same may be tried. It would be unreasonable then to hold that the proceedings, after verdict, would have to be suspended until some subsequent term of the court in which the proceeding was originally pending. It is clear that the proceedings, after such verdict, could be proceeded with in vacation, and the Judge would not be compelled to go back to the original county, in person, or wait until the next term of the court in that county.

The next objection presented by the appellant is, that the alternative writ does not state facts sufficient to constitute a cause of action, because the Act of February 22d, 1879, *supra*, did not consolidate Armstrong with Hutchinson county, and did not abolish his said office.

The plain reading of the Act admits of no other construction than that the consolidation was made, and that the appellant's office was thereby abolished. The operation of the Act as to these two counties was not left to a vote of the people. The second section of the Act consolidates the two counties in express terms. The third section provides as to who shall hold the offices in the enlarged county of Hutchinson, and the relator by virtue of his office, has the additional territory of what was formerly Armstrong county, embraced in his jurisdiction. The fourth section suspends and extinguishes all corporate business of Armstrong county, and enjoins *expressly* all officers of Armstrong county, (including the appellant,) except justices of the peace and constables, to "*immediately take to and deliver to the like officers of Hutchinson county*" all "*papers and property pertaining to their offices* respectively, which are required to be delivered to their successors in office by section fourteen of chapter five of the Political Code," and that immediately their offices should cease and determine.

With the fourth section of the Act, all legislation and reference, to said counties of Armstrong and Hutchinson, ceases. With said section the consolidation is complete and nothing more is left to be done as to them. And the further legislation in said Act is

wholly and in terms concerning other counties, and entirely independent of Armstrong and Hutchinson.

The 5th, 6th and 7th sections of the Act make somewhat similar provisions in reference to consolidating ·Hanson and Davison counties, and then section 17, without referring in any manner to Armstrong or Hutchinson counties, provides "that the proposition contained in the preceding sections of this Act to consolidate the counties of Hanson and Davison shall be submitted to the voters in *each* of said counties separately, at a special election hereby authorized to be held in *each* of said counties on the second Tuesday of September, 1879," and the manner of the ballots at such election is in the same section *expressly* provided for.    No provision is made in this section for elections in any other counties.

Then follows section 18, under which the appellant bases his excuse for continuing to exercise his office, and not delivering the books, papers, etc., to the relator.

Section 18 provides that, " If a majority of the votes cast at *such* election in each of any two of the said counties which, in this Act, is proposed to be consolidated, shall be in favor of consolidation, then as to *those* counties, this Act shall be in force and take effect on the first of October, 1879 ; and if a majority of the votes cast at such election, in either of said counties, shall be against consolidation, then, as to these counties, this Act shall have no effect."

When the Legislature used the words, " such election," in section 18, they unmistakably referred to the election provided for in the preceding section, to-wit: the election for Hanson and Davison counties.

This is the only election provided for in the whole Act, and the time for taking effect of the Act as to " those " counties, exactly corresponds with the time for holding the election provided for in section 17.    No provision is made for an election in Armstrong and Hutchinson counties.    And the limitation, as to the time of the taking effect of the Act, as to them, cannot be tortured out of section 18 by any reasonable construction.    If it is said that an election could be had at the general election for Armstrong and Hutchinson counties, such a proposition would be absurd, because

the law goes into effect October 1st, before a general election occurs.

The bungling words used in section 18, cannot, without absurdity, be made to apply to Armstrong and Hutchinson counties. But if there could be any doubt about the meaning of section 18, it is completely removed by sections 19 and 20.

When section 19 speaks of "the counties named in the preceding sections," it certainly refers to the only counties named in those two sections, to-wit: Hanson and Davison. And section 20 provides that if Hanson and Davison decide to consolidate, the offices shall become vacant, and successors are elected at the next general election, which would be the November election after October 1st, mentioned in section 17.

Sections 17, 18 and 19 provide for the time and manner of the elections in Davison and Hanson counties—the time when the Act shall take effect depending upon the result of "such election;" and provide for the indebtedness of the "said counties," if the counties "named" in the sections 17 and 18 decide to consolidate; and further provide for the expiration of the terms of office in "Hanson and Davison" counties, and filling of the vacancies at the general election.

It cannot be supposed that the Legislature, after so carefully and expressly providing for Hanson and Davison counties in such important matters, would intend to include Armstrong and Hutchinson, without doing so in express language. Beside, section 4 expressly negatives any such limitations on the taking effect of the Act on Armstrong and Hutchinson counties, when it provides " that immediately their offices shall cease, and the terms thereof end." Immediately, certainly referred to the time of the approval of the Act and not the following October.

For the foregoing reasons it follows that the Judge below committed no error in holding that the county of Armstrong was consolidated with Hutchinson county, and that the appellant's office was abolished on the 22d day of February, 1879.

The appellant also claims that the affidavits upon which the application for the alternative writ is founded should state in terms, "that the relator has no remedy at law." This allegation

is not indispensible either in the affidavits or in the alternative writ. (*People ex rel Fuller v. Hilliard et al*, 29 Ills., 413.) From an inspection of the record, and from the nature of this case, it is apparent that the relator, Eisenmann, had no plain, speedy and adequate remedy at law. When this is apparent to the Court on the face of the papers, such an allegation would be a mere conclusion of law. The relator in this case had demanded of the appellant to deliver the papers and property, although such demand was not necessary, and he refused to comply with the demand. The relator then brought an action in the nature of a *quo warranto* against the appellant and obtained a judgment against him. Still he refused to deliver the books and papers. The relator again demanded the same, and he still refused, in disregard of the judgment of the court, and contrary to the duty especially enjoined upon him by Statute, as a duty resulting from his office. From this state of facts it is clear that the relator "had not a plain, speedy and adequate remedy in the ordinary course of law."

There is no force in the position taken by the counsel of the appellant, that the proper remedy in this case is an action in the nature of *quo warranto*. The record discloses that that remedy had been exhausted by the relator, and no appeal had been taken from the judgment.

We can come to no other conclusion then, than that these proceedings were rightly brought, and that mandamus is the proper remedy.

Section 695 of the Code of Civil Procedure provides, that the writ of mandamus may be issued by the Supreme and District Courts to any inferior tribunal or person to compel the performance of an act which the law especially enjoins as a duty resulting from an office. And section 712, before quoted, gives the same power to the Judge of the District Court.

It was the duty of the appellant, immediately on the passage of said Act, to have taken to and delivered to the relator all the books and papers pertaining to his office, without demand. He was in the same position by the terms of said Act, except that he was not entitled to a demand, as he would have been if his term of office

had expired. And the provisions of section 14 of chapter 5 of the Political Code are expressly referred to in said Act.

It is now too well settled to remain in doubt that mandamus is the proper remedy to compel the transfer or delivery of the books, seals, papers and property pertaining to a public office, to the person properly entitled thereto. These are some of the numerous authorities in point. (*Parish v. Stearns,* 21 Pick., 151; *People v. Kilduff,* 15 Ills., 492; *People v. Head,* 25 id., 325; *Crowell v. Lambert,* 10 Minn., 369; *Atherton v. Sherwood,* 15 id., 221; *Warner v. Myers,* 4 Oregon, 72;) and others too numerous to cite.

Finding no error in the record, the judgment and proceedings below are

AFFIRMED.

SHANNON, C. J., and MOODY, J., concurring.

BARNES, J., did not sit in the case.