## DRISCOLL v. JONES.

1. The office of clerk of the district court was abolished by the constitution, upon the admission of South Dakota as a state.
2. The office of clerk of the circuit court is a new office, created by the constitution.
3. The incumbent in the old office of clerk of the district court, at the time of the admission of the state, did not become the clerk of the circuit court, by virtue of Section 4, Art. 26, of the constitution, for that section only provided that certain officers should continue to hold and exercise their respective offices until superseded under the constitution; and, the office of clerk of the district court being abolished, its former incumbent could not continue to hold and exercise it.
4. Section 32, Art. 5, of the constitution, having created the office of clerk of the circuit court, and having provided generally for the election of such officer, with other county officers, at the general election in November, 1890, and the state having been admitted on the second day of November, 1889, there was a vacancy in such office from the time of the admission of the state.
5. Under Section 37, Art 5, of the constitution, the board of county commissioners could legally fill such vacancy in their county by appointment.
6. *Mandamus* is the proper remedy to compel the delivery of the seal, records, and other property of an office to a person showing himself *prima facie* entitled to them.

(Syllabus by the Court: argued February 13, 1890; opinion filed March 1, 1890.)

Appeal from circuit court Lawrence county; Hon. JOHN M. NOWLIN, Judge.

The nature of the proceedings and the material facts are stated in the opinion.

*Martin & Mason* and *Wm. E. Church* for Appellants.

Upon the admission of South Dakota as a state the judicial fabric of the territory dissolved. *In re* Wood 9 Pac. 758; *in re* Hinkle 3 Pac. 531; Enabling Act § 24. The offices of clerks of the court were abolished with the courts and the terms of office of the incumbents ended. State v. Tifford, 1 Nev. 240; Martin v. Pieman, 8 Abb. Pr. 359. The late district court of the territory of Dakota and the present circuit court of the state of South Dakota are different and distinct courts and not identical. Identity of office is the only basis which would bring the defendant within the rule of Section 4, Article XXVI of the Constitution.

Vacancies may occur in offices newly created and never filled because of failure to elect or appoint, and in this case such a vacancy existed and it was competent for the board of county commissioners to fill such vacancy by appointment. Stocking v. State, 7 Ind. 329; Dillon Mun. Corp. § 161, Note 4; Clark v. Irwin, 5 Nev. 111; Welch v. Com. 89 Pa. 419.

It is the duty of one who holds an office without color of right to deliver on demand the records and insignia of his office to the proper incumbent and the performance of this duty may be enforced by *mandamus.* Enabling Act, § 23; Ter. v. Hauxhurst, 3 Dak. 305, High Ext. Legal Rem. § 73 *et seq.*; Jones v. Killduff, 15 Ill. 502; People v. Head, 25 Ill. 325; Com. v. Athearn 3 Mass. 286.

*William R. Steele* for Respondent.

*Mandamus* is not the proper proceeding by which to try the title to an office. *Mandamus* will not lie when there is any plain, speedy and adequate remedy in the ordinary course of law. Code Civil Proc. § 695 and § 696; Territory v. Cavanagh, 3 Dak. 326. *Quo warranto* is the appropriate proceeding. People v. Bradley, 2 Abbot N. S. 353; People v. Supervisors, 11 N. Y. 573. People v. Mayor of New York, 3 John. Cases 79; Briggs

v. McBride, 21 Pa. 882; People v. Olds, 3 Cal. 170: Meredith v. Board of Supervisors, 50 Cal. 434. This case is not brought within the rule of Ter. v. Shearer, 2 Dak. 336, for there the court simply sustained a *mandamus* upon an officer to deliver to his sucessor, books, etc., after the right to the office had been determined in *quo warranto.*

Under the act of Congress for the admission of this state the circuit court is the successor of the district court and like the district court is the court of general original jurisdiction. The defendant was a duly elected and qualified clerk of the district court at the time of the admission. § 4, Art. 26 of the Constitution provides that ·'all officers, civil and military, now holding their offices and appointments in this territory under the authority of the United States, or under the authority of the Territory of Dakota shall continue to hold and exercise their respective offices and appointments until superseded under this constitution." The constitution fails to provide for the election of clerks of court at the first election, but does provide for their election at the first general election. Therefore the defendant is in office under the constitution and should remain in office until superseded under it. Benner v. Porter, 9 Howard 241; Calkins v. Coke, 14 Howard 238; State v. Madens, 1 Kan. 90; State v. Sturmont, 24 Kan. 170; Scott v. Detroit, 1 Douglass 145; Parker v. Smith, 3 Minn. 240; Armstrong v. Paul, 1 Nev. 110; State v. Ewing, 17 Mo. 518; People v. Jobs, 7 Col. 590. Names are not controlling in reference to officers. The question is, are the duties the same. People v. Raymond, 37 N. Y. 429; People v. Colby, 54 Cal. 186.

There can be no vacancy in an office to be filled by the people, by a failure to elect, until the time for the election. State v. Ewing, 17 Mo. 518; People v. Supervisors, 100 Ill. 508.

County commissioners can make no original appointment, but can appoint only in cases where a vacancy occurs under the provisions of § 1385 Comp. Laws. Rosborough v. Boardman, 67 Cal. 110; McCrary on Elections pp. 210–211; State v. Howe, 18 Am. R. 323; State v. Messmore, 14 Wis. 192; Com. v. Swift 4 Wharton 486.

KELLAM, J. The respondent in this action was appointed clerk of the district court in and for Lawrence county, in the Territory of Dakota, on the seventh day of January, 1887, by Hon. CHARLES M. THOMAS, then judge of said district, and was holding said office under such appointment at the time of the admission of the State of South Dakota, and still retains possession of the seal and other property of such office. On the twelfth day of November, 1889, the appellant was appointed to said office by the board of county commissioners of said Lawrence county, and on the 22d day of the same month duly qualified, as required by law. No question is made as to the regularity of his appointment, or qualification under it, if the board had authority to make such appointment. On the 25th day of November, 1889, and prior to the commencement of these proceedings, appellant notified respondent of his said appointment as clerk of the circuit court for said Lawrence county, and of his qualification, and demanded of him the possession of the seal, records, books, furniture, and other property and appurtenances of said office,—all of which was refused by said respondent. On the 27th day of November, 1889, the Honorable CHARLES M. THOMAS, judge of the said circuit court for Lawrence county, on petition of appellant, issued an alternative writ of *mandamus*, the mandate of which was as follows: "Now, therefore, we, being willing that full and speedy justice should be done in the premises, do command you that immediately upon receipt of this writ you do deliver up and surrender to the said Robert H. Driscoll the possession and custody of the seal of the circuit court in and for the county of Lawrence, and all and singular the books, papers, and records of said court, or pertaining to the office of clerk of said court, in your possession, or under your control, including all books, papers, and records of the late district court of the county of Lawrence and Territory of Dakota, and of the clerk thereof, and also the keys and furniture of the rooms or offices provided by the county for the use of said clerk, and the keeping of said records, or that you show cause," etc. By request and consent of parties and counsel, the matter was heard before Hon. JOHN

W. NOWLIN, judge of the seventh judicial circuit, at Deadwood. in said Lawrence county, January 23, 1890, when the court dismissed said alternative writ; and from such judgment appellant appeals to this court.

Respondent contends that this is essentially a proceeding to try title to an office, and that *mandamus* cannot be used for such purpose. In theory, the line of demarkation separating the provinces of *mandamus* and *quo warranto*, and consequently the law governing each, respectively, is very well defined; but the practical difficulty often is to determine, from the features and characteristics of any particular case, to which province it belongs, and consequently to which law it is a rightful subject. The law undoubtedly is, as stated by the learned counsel for the respondent, that title to office is not properly determinable in *mandamus* proceedings. If this proceeding involves primarily the title to this office, and a decision of this application for *mandamus* requires the investigation and determination of such a controversy, then, certainly, *mandamus* is not the proper remedy; and this m ist be the first question to be settled. The appellant invokes the aid of the law by *mandamus* for the accomplishment of a specific object, to-wit: the possession of the seal, records, and other property incident to the office of clerk of the circuit court, and the mandate of the alternative writ simply responds to that appeal. Upon a trial in *mandamus*, the plaintiff presents his credentials, and the court then says, as a matter of law, these credentials do or do not entitle the holder to the possession of the property demanded. The court does not go behind the credentials to examine any antecedent question of fact which might affect their force or credit. It takes the credentials at their face value, and if they come from the proper authority, and are regular in form, the court declares their legal force and worth, not as evidence of plaintiff's title or ultimate right to the office, but their legal value in support of his present claim,—in this case, the possession of the records of the clerk's office. These credentials may be subject to impeachment in *quo warranto* proceedings, where all the antecedent facts may be investigated, and in such proceedings the court may

say what ought to have been done, and give judgment accordingly; but in *mandamus* the court knows only what has been done, and, if the same is legal and authoritative on its face, further inquiry is foreclosed. The question tendered by this application for *mandamus* is not who is or who may be finally entitled to this office, upon investigation of all precedent facts of jurisdiction or regularity, but which of these parties—the one holding the appointment of the judge, supplemented by the provision of the state constitution, hereinafter considered, and the other the appointment of the board of county commissioners—is presently, and pending such investigation, entitled to the possession of the property pertaining to such office. It may be that in this particular case a decision of this question will render further investigation by *quo warranto* fruitless, but that could only be so because everything is before the court on this record that could be presented in *quo warranto*. It would not justify the withdrawal of this case from the dominion of the general rule, but would rather demonstrate that, as a matter of fact, no hardship could result to either party by a decision in this case. The specific and only object sought by this appellant, and the specific and only subject covered by the alternative writ in this case, being the immediate and present possession of the seal and other property pertaining to the clerk's office, we hold that appellant was entitled to proceed by *mandamus*, unless he had other plain, speedy and adequate remedy, in the ordinary course of law. Territory v. Shearer 2 Dak. 332, 8 N. W. Rep. 135 Crowell v. Lambert. 10 Minn. 369, (Gil. 295,) State v. Sherwood, 15 Minn. 221, (Gil. 172.)

The statute authorizes proceedings in the nature of *quo warranto* to determine the title to office, and this is the remedy which respondent claims should have been resorted to in this case. So far as we have succeeded in showing that this is not a proceeding to try the title to this office, the objection to the use of *mandamus* is removed; but, beyond this, an action in the nature of proceedings in *quo warranto* would, in our judgment, be neither speedy nor adequate. It would not be speedy; for, in the ordinary course of the law, a final determination of the

rights of the respective parties to this proceeding would not be reached during the present term of office. State v. Sherwood, 15 Minn. 229, (Gil. 172.) It would not be adequate, for it would not accomplish the object sought. A judgment of ouster against respondent, and in favor of appellant, would not put him (appellant) in possession of the records of the office to which such judgment would establish his title. He might still be obliged to resort to *mandamus* to obtain such possession. Section 5353, Comp. Laws; Territory v. Shearer, 2 Dak. 346, 8 N. W. Rep. 135. From these views it follows that, in our opinion, appellant has not mistaken his remedy, but is properly proceeding by *mandamus;* and we will now proceed to consider the case upon the merits.

The respondent, Jones, claims possession of the records and other property in controversy by virtue of his appointment as clerk of the district court in and for Lawrence county, in 1887, by the then judge of the district of which said county was a part; and Section 4, Art. 26, of the constitution of South Dakota, which section is as follows: "All officers, civil and military, now holding their offices and appointments in this territory under the authority of the United States, or under the authority of the Territory of Dakota, shall continue to hold and exercise their respective offices and appointments until superseded under this constitution." If, in a solution satisfactory to ourselves of the questions presented by this case, it had become very material, we should have pursued with considerable interest the inquiry as to the qualifications of the respondent, by virtue of the judicial appointment, as an officer, "under authority of the United States or the Territory of Dakota." Evidently, the provisions of the organic act, authorizing the appointment by "each judge of the supreme court of one person as clerk of the district over which he presides," did not, in the opinion of the early law-makers of the territory, authorize an appointment of such clerks for counties; for at their very first session, by Chapter 29 of First Legislative Assembly, they authorized the several judges to appoint a clerk for each organized county in his district, and this law, through several unimportant

changes, grew into what now appears as Section 439, Comp.
Laws. Whether rightfully there or not, it is not now import-
ant to determine. By the act of March 5, 1883, this law was
repealed, and the election of a clerk of the district court in
each organized county provided for and authorized. This law
was still operative, or, at least, it was unrepealed, at the date
of respondent's appointment by the judge; but as the view we
take, and the disposition we make of this case, does not render
necessary the pursuit of this inquiry, we proceed more directly
to consider the provisions and force of said Section 4 as author-
ity for respondent to retain possession of the seal and records
of the office which he claims.

There is little room for discussion as to the general pur-
pose of this section. The destruction of the territorial, and the
establishment of the state government were practically simul-
taneous. The change was instantaneous. But of the large
number of officers and agents—amongst whom must necessarily
be distributed the greatly diversified duties of the public ser-
vice, and who must at once, upon the admission of the state, be
depended upon to discharge such duties—but few would have
been selected under the provisions of the new constitution. It
was wisely provided, as it has often been before in similar cases,
that all officers should continue to hold and exercise their re-
spective offices and appointments "until superseded under the
constitution." This supersession might occur either by the dis-
continuance of the office itself, under the constitution, or, if
the office continued, by the selection, in a legal way, of a new
incumbent. In either event, the officer would be superseded.
And so it becomes material to inquire whether or not the office
to which respondent was appointed, to-wit, clerk of the district
court for Lawrence county, was continued or discontinued by the
new constitution. If the jurisdiction of the old district and the
new circuit courts were the same, or even co-extensive, the
change in the name of such courts would not be controlling
upon the question of their identity; but they are quite different
in many important respects. The district court was created by
and received its authority from the laws of congress. The cir-

cuit court is created by and receives its authority from the state constitution. As clerk of the district court of Lawrence county, respondent was an officer of a court having jurisdiction of both territorial and federal cases. The clerk of the circuit court is not an officer of such a court. As clerk of the district court, respondent was not an officer of the county court, but was an entire stranger thereto. The clerk of the circuit court is, by virtue of such office, clerk of the county court. These, and many other differential features, are radical, but are too obvious to require special enumeration; and the learned counsel for respondent frankly concedes that the circuit court is a new creation of the constitution, and the office of clerk of such court a new office. But if the old office of clerk of the district court was abolished by admission of the state, and the office of clerk of the circuit court was newly created by the constitution, how could there be, as between the two, any continuity of holding? By the section under consideration, certain officers might continue to hold and exercise their respective offices; but could they continue to hold an office, if the office itself did not continue? To continue to hold and exercise the duties of an office is to do so without interruption, without change; but if the old office became defunct, and a new and different one was created, how could the successive holding of both offices become the continuous holding of the first? It was the office of clerk of the district court which this respondent was authorized to continue to hold and exercise, if any; but such office, it is conceded, was abolished by the constitution. How, then, could respondent continue to hold and exercise it? Can the authority to hold and exercise the duties of an office survive the destruction of the office itself? And will it even go further, and install the incumbent of the obsolete office into a new one, because it is created in part as a substitute for and successor of the old? Section 4 can only apply to such officers as could continue to hold their offices, because their offices continue; and as the office of clerk of the district court of Lawrence county did not itself survive the dissolution of the territorial government,— in a word, did not "continue,"—so the respondent did not and

could not, within the contemplation of said section, continue to hold and exercise such office. We conclude, therefore, that the claim of respondent to hold and retain possession of the seal and other paraphernalia of the office of clerk of the circuit court for Lawrence county, by virtue of his appointment as clerk of the district court for Lawrence county and of said Section 4, Art. 26, of the constitution; is indefensible, and cannot be maintained.

We come now to consider the claim of appellant to the possession of the seal, records, and other property incident to the office of clerk of the circuit court for Lawrence county, by virtue of his appointment as such clerk by the board of commissioners of said county. By Section 23 of the act of Congress approved February 22, 1889, under which the state was admitted, it was provided that, in respect to all cases, proceedings, and matters pending in the supreme and district courts of the territory of which the circuit and district courts of the United States might not have jurisdiction, the courts of the state established under its constitution should be the successors of said supreme and district courts. The State of South Dakota, by organizing under the provisions of this law, accepted its conditions, and consented to and did establish its circuit court as the successor of the territorial district court, subject to the distribution of its cases on jurisdictional grounds, as therein provided, and consented to and accepted the consequent condition of said section, and that all the files, records, indictments, and proceedings relating to such cases should be transferred to the appropriate courts of the state. Article 5 of the constitution creates the circuit courts, and defines their jurisdiction, and these courts, subject to the conditions and qualifications just noticed, are the successors of the territorial district courts. Section 32 of said Article 5 creates the office of clerk of the circuit court. By preadmission election, the several circuit courts of the state were provided with judges, but no specific provision was made for filling the office of clerk of the circuit court until the election in November, 1890. Section 5, Art. 9. How should this office

be filled in the meantime?   Sec. 37, Art. 10, provides that "vacancies in the elective offices provided for in this article shall be filled by appointment, until the next general election, as follows:   All judges of the supreme, circuit, and county courts, by the governor, all other judicial and other officers, by the county board of the counties where the vacancy occurs. . *   * The authority of the board of commissioners of Lawrence county to appoint a clerk of the circuit court for such county can hardly be questioned, if there was at the time a vacancy in such office, within the meaning of the constitution.   Such vacancy in the office was a condition precedent to their right to act.   Did such "vacancy" exist?

Simultaneously with the admission of the state, the constitution became the operative, imperative and constitutional law. The instant it became so operative, it created and established the office of clerk of the circuit court in each organized county. With the existence of the state came the existence of the office of the clerk of the circuit court for Lawrence county.   It was a complete and established entity, as much as the state itself, but it was empty; it was an unfilled office.   It was in fact a vacant office, for it had no incumbent.   If the office existed,— which is not questioned,—and if it was unfilled,—which, for the purposes of this case, is already determined.—we can think of no other ingredient necessary to complete a vacancy in such office.   Such a conclusion is so plain as to repel the aid of argument, unless the word "vacancy" was deliberately used in the constitution in a restricted and limited sense, and this is the strenuous contention of respondent.   He insists that as the constitution does not define "vacancy," and the statute does, such definition becomes imperative and exclusive, and, unless some one of the conditions enumerated in the statute exists, there can be no vacancy in a legal sense; and upon this point he reinforces his own very forcible reasoning by referring us to Rosborough v. Boardman, 67 Cal. 116, 7 Pac. Rep. 261; State v. Messmore, 14 Wis. 192.   The force of the California case is somewhat weakened by the dissenting opinion of THORNTON, J., who says:   I am of opinion that an office is vacant which

has never had an incumbent legally elected and appointed."
We are not able to apprehend as very tangible the distinction
claimed to be discovered and sought to be maintained by the
Nevada supreme court between the Wisconsin case, *supra*, and
the case of Stocking v. State, 7 Ind. 329, discussed at length
in the opinion of the court in State v. Irwin, 5 Nev. 111; and
while we have great respect for the delicate courtesy between
courts, that seeks by nice and hypercritical distinctions between
cases to avoid the appearance of having reached different and
irreconcilable conclusions, we prefer to recognize the fact
of the difference, where it plainly exists, and adopt the conclu-
sion, in whole or in part, which seems to us best sustained by
reason and argument. Upon the admission of South Dakota
as a state, the constitution had firmly established the circuit
courts as a part of its judicial system. It had provided for the
preadmission election of the judges of these courts, and they
had been elected. It had, as we have already seen, by Section
4, Art. 26, supplied the court, with an executive officer, by
providing that the sheriff should continue to hold his office, and
thus had fully equipped the court for its duties, with the single
exception of a clerk. Can it be supposed that the constitutional
convention intended that this absolutely necessary officer of the
court should be dispensed with until he should be elected by the
people in November, 1890? We think they intended to and did
meet the demands of the interim between admission and the
election provided for in 1890 by the provisions of Section 37,
Article 5, and that such section authorized the appointment of
a clerk so as to fill a vacancy. In this view we are sustained
by Stocking v. State, 7 Ind. 329; Walsh v. Com., 89 Pa. St. 419;
State v. Irwin, 5 Nev. 111; Henderson v. Boone Co., 50 Mo. 317.

While we acknowledge there is much force in the argument
of respondent's counsel, that the statute having already defined
a "vacancy," and thus given it a legal meaning, the constitu-
tional convention must be presumed to have used the word in
that sense, we think, however, that the presumption cannot
stand, when confronted with the fact to which we have already
referred,—that having fully furnished the court with every

other officer, for immediate service upon the admission of the state, the convention had postponed the election of its clerk until the general election in 1890. This necessarily left the office unfilled, if there was no vacancy. until that time. This was patent to the convention and could not have been overlooked. And they must have deliberately intended, either that this important office should remain without an incumbent, its duties neglected and undischarged, or else they regarded the office as vacant, and made provision by Section 37 for filling the "vacancy." This latter view seems to us the more reasonable, and we adopt it more readily because, to hold generally that a statutory definition of a word must control, and determine its meaning as used in the constitution, would be to subordinate the constitution to the statute, and make the legislature its ultimate interpreter, by recognizing its authoritative power to define its terms. The order and judgment of the circuit court dismissing the alternative writ of *mandamus* is reversed, and the cause remanded, with instruction to the circuit court to issue peremptory writ in accordance with appellant's petition. All the judges concur.